# REGINA V. CHAMBERS, Respondent v. KUPPER-BENSON HOTEL COMPANY, Appellant.

**Kansas City Court of Appeals, January 30, 1911.**

1. **CARRIER AND PASSENGER:** Elevators: When Relation Arises. In an action for damages for the death of plaintiff's husband, caused by the negligent operation of defendant's elevator, plaintiff's evidence tended to establish that the operator returned for the sole purpose of receiving deceased, stopped the car, and opened the door at the proper place; that the injury was caused by the sudden drop of the car while deceased was in the act of entering, and that this sudden drop could be caused either by some defect in the machinery, or a movement of the lever by the operator. *Held*, that the relation of carrier and passenger began the moment deceased started to enter the car, and that defendant then owed deceased the duty of exercising the highest degree of care until he had passed safely in.

2. ————: Specific Allegation of Negligence: Res Ipsa Loquitur. Plaintiff alleged that the drop of the car was caused by the negligence of the operator. *Held*, that to sustain this specific allegation of negligence, plaintiff was not required to produce a witness who saw the operator move the lever, but might prove the fact by circumstantial evidence, and that in doing the latter, plaintiff was not relying upon the doctrine of *res ipsa loquitur*.

3. ————: Humanitarian Doctrine: Instructions. Where the evidence of defendant's own witness, the elevator operator, afforded reasonable ground for belief that the car could have been stopped, and the injury averted, and plaintiff abandoned "the last chance" issue in her instructions, the error of the trial court, if error there was, in failing to instruct the jury that there was no such issue before them was not prejudicial.

4. **EVIDENCE:** Death of Husband: Age, Health, Capacity. Evidence of age, health, expectancy, business capacity, etc., of plaintiff's husband, as well as evidence of her own age, expectancy, and state of health, is admissible in an action where the pecuniary loss that plaintiff suffered in consequence of the death of her husband, was an important issue.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmons* for appellant.

*Ellis, Cook & Barnett* and *Beardsley, Gregory & Kirshner* for respondent.

JOHNSON, J.—Plaintiff, the widow of M. A. Chambers, deceased, prosecutes this action to recover damages for the death of her husband which she alleges was caused by the negligence of defendant. The jury before which the cause was tried gave her a verdict for six thousand dollars, and the case is here on the appeal of defendant from a judgment for plaintiff on that verdict.

Defendant is a corporation engaged in operating the Hotel Kupper, a large hotel in Kansas City. Mr. Chambers was a lawyer and with plaintiff, his wife, as a partner, conducted a law, loan and abstract office in Hoxie, Kansas. His practice and business were lucrative and brought him an income of from five to seven thousand dollars per annum. In October, 1908, Mr. and Mrs. Chambers, accompanied by their daughter, who was seventeen years old, visited Kansas City and were guests of the Hotel Kupper. In the evening of October 24th they went out to dinner and returned to the hotel about eight o'clock. The weather being inclement Mr. Chambers wore an overcoat and carried an umbrella. They entered the lobby at the north entrance and proceeded across to the south side of the room to the door of the passenger elevator. The room was well filled with people. Mr. Chambers was a heavy man, deliberate in his movements, and their progress was not rapid. As they approached the elevator, Mr. Chambers led the way, his daughter followed immediately and his wife was two or three steps behind. The elevator, carrying two passengers, had just started up from the lobby when the operator, becoming aware that other guests wished to become passengers, stopped

the car at a point two or three feet above the lobby floor and started back for the express purpose of taking on the Chambers family. The car itself had no door but there were sliding metal doors at the entrance to the elevator shaft and it was the duty of the elevator boy to keep these doors closed except when the car was at rest at the lobby for the purpose of receiving and discharging passengers. The boy was in the act of closing the doors as the car started to ascend but had not completely closed them when he stopped and returned. There is evidence introduced by plaintiff to the effect that the boy opened the doors, brought the car to a complete stop at the lobby floor and that Mr. Chambers started to enter and succeeded in placing his forward foot on the car floor with his other foot still on the lobby floor when the car dropped suddenly and without warning and descended with great rapidity until the obstruction to its descent offered by the body of the unfortunate man, which was caught between the top of the car entrance and the lobby floor, produced slack in the cables which automatically set in operation an appliance that shut off the power and applied the brakes. Mr. Chambers received injuries from which he died that evening. The elevator was run by electricity and an expert examination made immediately after the injury disclosed no defect in the machinery or any of the appliances. Operation of the elevator was resumed immediately and it appeared to be in perfect order.

Both parties tried the case on the theory that the one great issue was whether the injury was caused by the negligence of the elevator boy or was caused in whole or in part by negligence of the deceased. The petition alleges:

"That by reason of the negligence, carelessness and unskillfulness of the defendant company, its officers, agents, servants and employees in charge of said

elevator, and of the mechanism thereof and as a result of such negligence, carelessness and unskillfulness, while the body of said M. A. Chambers was partly in and partly outside said elevator car, and while he was so as aforesaid in the act of entering into the same, the said car suddenly descended and fell, and in so doing, the steel cross bar across the front and near the top of said descending car caught said M. A. Chambers across the shoulders and crushed his body and legs downward upon the main floor of the building and into a very narrow space, with such force that the bones of his limbs and body were broken and crushed and injuries inflicted causing his death a few hours later.

"That defendant was further negligent, careless and reckless in the premises in that after said M. A. Chambers was in a perilous position and before the injuries herein complained of had been inflicted and after defendant, through its agent and servant in charge of said car knew, or through the exercise of such care as was incumbent upon the operator, might have known of said peril in time to avert the same, it neglected and failed to avert it and failed to raise said elevator car but allowed the same to continue to crush the body of said M. A. Chambers."

The answer is a general denial and a plea of contributory negligence. On behalf of defendant the evidence tends to show that Mr. Chambers approached the elevator in great haste and called sharply "going up" when he observed the car starting to ascend; that the elevator boy, hearing the call, stopped and started to descend; that he stood in the car facing the entrance with his right hand on the lever that controlled the car and his left on the sliding door; that as the car descended Mr. Chambers impatiently seized the door and started to open it wider; that the operator struggled to keep the intruder out; that Mr. Chambers violently

jerked the door open and proceeded to step into the car while it was still descending and that the car continued to descend until arrested by the imprisoned body.

The elevator boy testified, in part, as follows:

"Q. Where was your left hand at that time? A. It was on the door, elevator door.

"Q. Where was your right hand? A. On the elevator lever.

"Q. What were you doing with your left hand? A. Trying to keep the door shut and keep Mr. Chambers out until I could get, could bring the elevator to a stop.

"Q. What was Mr. Chambers doing? A. He had his left hand on the door pushing the elevator gate back and—I won't let the elevator open for anybody to get into it until I, I have to have the car level with the floor. . . ."

"Q. What did he do next after that, if anything? A. He put his left hand on the gate which lacked a few inches of being closed, shoving the gate—kind of an iron gate—and I had my left hand on the elevator gate, trying to keep it closed until I could stop the elevator at the proper place.

"Q. What happened after that—what did Mr. Chambers next do after that? A. He pushed the door back far enough to get about half way into the car and had one foot on the elevator floor and one on the lobby floor and I tried to keep him out until I could get it stopped and he kept going in and I kept trying to get the elevator gate closed and the car kept descending and the car descended in some way. Now I paid more attention to keeping him out than I did to stopping the car, as I knew the passengers on the car were safe and knew he was safe as long as I kept him out.

"Q. What happened after that? A. Well, the car kept descending, you know, and he was continually

trying to get in it. If he had stepped back or stepped into the car all at once there wouldn't have been any accident. I was trying to keep him out, you know, more than anything else, you know, and the car came on there and caught him on the left shoulder and he had one foot on the floor of the elevator.

"Q. Which foot? A. The right foot and the car came on down this way and hit him and caught him and held him there so that the weight of his body held up the elevator and rope became slack and the elevator was dead at that time and I could do nothing at all with the car from where I was."

On cross-examination he was asked why he did not stop the car on the level of the office floor and answered: "Simply because I thought it would be better to keep Mr. Chambers out of there. If I went down in the basement it wouldn't hurt nothing and Mr. Chambers was liable to get on the car when it was running and liable to be some danger."

At the request of plaintiff, the court instructed the jury as follows:

I. "If you find from the evidence that on the evening of October 24, 1908, defendant company was in the possession of Hotel Kupper, in Kansas City, Missouri, and managing the same as a hotel; that defendant then maintained a passenger elevator in said hotel for the carriage of its guests and others from one floor to another; that on said day M. A. Chambers was a guest of said hotel, and sought passage for himself upon said elevator to be carried therein from the first or main floor of said hotel to an upper floor therein, for the purpose of reaching rooms used by him as a guest thereon, that thereupon, for the purpose of receiving said M. A. Chambers in the car of said elevator to carry him therein, the operator then in charge thereof brought said elevator car to a position with the car floor substantially on a level with the main floor of

said hotel and there brought the same to a position of rest, and that said M. A. Chambers was then immediately in front thereof and approaching the same to enter; that thereupon the operator of said car opened the sliding door leading into said elevator car, or permitted the same then to stand open to a width sufficiently large to permit said Chambers to enter; that thereupon said M. A. Chambers stepped forward, putting one foot into said car in the act of entering same, then, if you find the foregoing from the evidence in this case, you must find that said M. A. Chambers was a passenger upon said car, entitled under the law to receive from defendant and the operator in charge of said car the highest degree of care reasonably practicable for the personal safety of said Chambers.

II. If upon the evidence in the case and under the instructions of the court as elsewhere given in this case, you find that said M. A. Chambers was, on the evening of October 24, 1908, a passenger upon the elevator car in question; and if you further find from the evidence that at said time plaintiff was the wife of said M. A. Chambers; that said Chambers was at said time in the exercise of ordinary care; that by reason of the negligence of defendant through its employee in charge of said elevator car, the said car suddenly descended while said Chambers was in the act of entering said car and thereby caught and crushed him so that he died as a result thereof, then your verdict must be in favor of the plaintiff.

III. If you find for the plaintiff, you will in your verdict fix the amount of her damages, not exceeding ten thousand dollars, at such sum as you may deem fair and just under the evidence in the case with reference to the necessary pecuniary injury resulting to her from the death of her husband.

IV. You are instructed that the words "negli-
gence" and "negligent" as used in these instructions
mean failure to exercise ordinary care; and ordinary
care means such care as an ordinarily prudent person
would usually exercise under the same or similar cir-
cumstances.".

In disposing of the questions arising from the de-
murrer to the evidence which defendant argues should
have been given, we give controlling effect to the evi-
dence of plaintiff, and find that such evidence tends to
establish the following facts: First: Mr. Chambers
approached the elevator with the evident intention, rec-
ognized by the operator, of becoming a passenger on
the car and the operator stopped and returned for the
sole purpose of receiving him and his companions as
passengers. Second: The elevator door was not en-
tirely closed when the descent began and the operator
opened it and stopped the car at the proper place to ad-
mit the passengers. Third: The injury was caused by
the sudden drop of the car while Mr. Chambers was
in the act of entering. Fourth: There were only two
possible causes for the sudden movement, of the car,
i. e., some defect in the machinery or appliances or a
movement of the lever held by the operator.

The defect of the position assumed by defendant
in its argument of the demurrer to the evidence is
that in vital respects it rests entirely on the evidence
of defendant and rejects as unsupported by substantial
evidence basic facts of plaintiff's case which we find
supported by strong evidence. The keynote of the ar-
gument is that Mr. Chambers attempted to force his
way into a rapidly descending car, against the will and
the utmost efforts of the operator and with this pre-
mise, defendant contends that no relation of carrier
and passenger was created between defendant and
Chambers and that the operator acted within the scope
of his duty and right in attempting to repel an unwar-

ranted and dangerous intrusion. We are cited to the
case of Schepers v. Railway Co., 126 Mo. 665, where
the Supreme Court held that "one does not become a
passenger on a street railway by a mere attempt to
get on a car while it is in motion; there must, in such
case, be some act on the part of the carrier, indicat-
ing its acceptance of such person as a passenger to
make him one." But in that case, the rule is recog-
nized that "where a person intends to take passage
on a street car and has hailed it for that purpose and
it has been stopped to enable him to enter, he is to be
regarded as a passenger while he is in the act of care-
fully and prudently attempting to step upon the plat-
form." And speaking through BROADDUS, P. J., we
held in Scott v. Railway, 138 Mo. App. 196, that "when
a signal is given by one wishing to board a street car,
or when his attitude is such as to indicate such wish,
and either is seen and recognized by the motorman
and in apparent response he turns off the power and
sets the brakes, in view of the passenger, indicating
to him that the car is going to be stopped that he may
get aboard, and he without negligence attempts to do
so, the contract of the carrier and passenger is com-
plete."

This rule applies to passenger elevators main-
tained in hotels for the accommodation of guests and
their visitors. Where an elevator is stopped at a floor
and the door is opened for the reception of passengers
the relation of carrier and passenger begins the mo-
ment the latter starts to enter the car and brings him-
self within range of its possible activities. "There is
no distinction in law between the duties and liabili-
ties of a carrier by elevator and one by railroad. Each
is bound to the use of the utmost care and skill in the
choice and maintenance of machinery and appliances,
and the selection of operatives, and the liability of
both for the slightest negligence of an operative, irres-

154 App—17

pective of the care with which he may have been se-
lected, resulting in damages to a passenger, is in its
last analysis, identical." [Lee v. Knapp & Co., 155
Mo. l. c. 642.]

On the hypothesis of facts presented by the evi-
dence of plaintiff the relation of carrier and passenger
began when the car was returned and stopped at the
lobby floor; the elevator door was opened by the opera-
tor and Mr. Chambers started to enter from his place
of safety in front of the door. Defendant then owned
him the duty of exercising the highest degree of care
to hold the car at rest until he had passed safely in
and any breach of that duty resulting in injury would
constitute actionable negligence.

But defendant contends there is no evidence to
support the specific charge in the petition that the drop
of the car was caused by the negligence of the opera-
tor and that since specific negligence is alleged plain-
tiff cannot find aid in the doctrine of *res ipsa loquitur*.
The answer to this argument is that the evidence of
plaintiff does not compel indulgence in any presump-
tion in order to find that negligence of the operator
was the proximate cause of the injury but the exis-
tence of such negligence appears as an inevitable con-
clusion from facts and circumstances in proof. Plain-
tiff was not required to produce a witness who saw the
operator move the lever but she might prove the fact
by circumstantial evidence. Here was a car in per-
fect condition under complete control of the operator
who stood with his hand on the lever. It could not de-
scend unless the lever was moved and any reasonable
mind would conclude from such facts that the operator
either voluntarily or through inattention to duty
moved the lever. Such conclusion rests primarily on
evidentiary facts and circumstances and does not de-
pend on the process of building inference on inference,
nor does it need the aid of presumption. As the evi-

dence of plaintiff exculpates her husband from the imputation of negligence and shows that his death was caused by the negligent handling of the car, it follows that the learned trial judge did right in overruling the demurrer to the evidence.

Defendant insists that the allegations in the petition of negligence under the "humanitarian" doctrine are unsupported by evidence and, therefore, that the court erred in refusing instructions offered by defendant, withdrawing such negligence from the consideration of the jury. The evidence of plaintiff does not present a case under the humanitarian rule and, in effect, plaintiff abandoned the claim of such negligence in the instructions given at her request. A clean-cut issue is presented by the evidence and clearly submitted in the instructions of the question of whether the injury was caused solely by the negligence of defendant or wholly or in part by negligence of Mr. Chambers. In accepting the evidence of plaintiff, the jury necessarily had to exclude the issue of humanitarian negligence tendered by the petition. Had the jury disbelieved the version of the injury given in the plaintiff's evidence and accepted as true the evidence of defendant, they would have found in that evidence reasonable ground for the belief that, although Mr. Chambers was negligently endeavoring to enter a moving car, the injury could have been averted by the operator after he perceived the danger by the simple expedient of stopping the car. The operator admits he did not try to stop and we cannot avoid indulging the thought that his own testimony shows his efforts could have been more sensibly employed in throwing the lever to stop the car than in struggling so vigorously to prevent what he considered a wrongful intrusion. His excuse that he could not have stopped but on turning back was compelled to run the car almost to the basement does not merit serious consid-

eration. The elevator was equipped with the usual devices for stopping, had two "speeds"—one slow and the other fast—and was in perfect condition. The jury would have been entitled to believe the car could have been stopped and the injury averted if the operator had tried to stop. In this view of the evidence we may concede for argument that since plaintiff abandoned the "last chance" issue in her instructions the court should have instructed the jury that there was no such issue before them and still we would be constrained to regard the error as harmless. How could the defendant be prejudiced by what, at best, would be a mere theoretical error when its own evidence shows so clearly that the operator fully realized the peril but in his anger refused to make the simple turn of the hand that would have saved a human life? We are not overlooking the rule that a plaintiff must recover, if at all, on the issues tendered by his pleadings and evidence and submitted in his instructions, but we think this an instance for the application of the statutory rule prohibiting the reversal of judgments except for *prejudicial* error.

A number of objections are urged against rulings of the trial court on the admission of evidence but none of them is tenable. Evidence of the age, expectancy, health, habits, business capacity, etc., of plaintiff's husband was admissible in an action where the pecuniary loss she suffered in consequence of the death of her husband was an important issue. The issue involves also the question of her own age, expectancy and state of health. The rule in such cases is correctly stated by the Supreme Court of Kansas in Railway v. Moffatt, 60 Kan. 1. c. 119: "Mathematical accuracy in measuring the pecuniary loss suffered is not practicable, and in general it may be said that the basis for the allowance of damages may be found in the character, habits, capacity, business and condition of the deceased, as

well as the age, sex, circumstances and condition in life of the next of kin. The court is of the opinion that with the elements thus furnished the jury may make a fair estimate of the damages that are recoverable.''

Tested by this rule the damages allowed by the jury are not excessive.

A careful examination of the record discloses no substantial error in the trial. The judgment is mani-festly righteous and should be affirmed. It is so order-ed. All concur.