SARAH COLE, Respondent, v. J. H. LONG, Appellant.

Springfield Court of Appeals, February 14, 1921.

1. **DEATH: Cause Question for Jury.** Evidence in an action for death following a personal encounter between deceased and defendant *held* to make a case for the jury on the theory that death resulted from acts of defendant under circumstances making him liable, rather than from apoplexy due to anger and excitement.

2. ———: **Wrongful if Resulting from Unprovoked Assault.** If defendant, without just cause or provocation, struck or choked deceased, and as a result thereof deceased died, the killing was wrongful.

3. **TRIAL: Jury Properly Instructed that Killing, if Under Enumerated Conditions, was Wrongful.** Instead of leaving to the jury the question whether the killing was wrongful, they are properly instructed that, if it occurred under enumerated circumstances (which as matter of law render it wrongful), it was wrongful.

4. **DEATH: Instruction on Damages Held not Erroneous.** Instruction in action for death of plaintiff's husband, following Revised Statutes 1919, section 4219, that the jury may give such damages not exceeding $5,000 as they deem fair and just, under the evidence, with reference to the necessary injury to plaintiff from the death, *held*, not erroneous in its general scope.

5. **APPEAL AND ERROR: Request for More Definite Instruction Necessary.** To complain of an instruction as too general, it not being erroneous, one more definite must have been requested.

6. **TRIAL: Instruction Held not to Assume Plaintiff was Entitled to Recover for Actual Loss.** An instruction on exemplary damages in an action for death, even if assuming that plaintiff had sustained an actual loss or pecuniary injury, *held*, not to assume that plaintiff was entitled to recover therefor.

7. ———: **Instruction may Assume Undisputed Fact.** It is not error for an instruction to assume as true a fact about which there is no conflict in the evidence.

8. **DEATH: Instruction on Exemplary Damages Held not Confusing** Instruction on exemplary damages in action for death *held* not to so intermingle matters of exemplary and pecuniary damages as to be confusing.

9. **APPEAL AND ERROR:** Submission of Punitive Damages Harmless where None were Found. Even if the evidence did not warrant instructing on punitive damages, doing so was harmless; the record showing no such damages were found.

10. **DEATH:** Evidence of Defendant's Financial Standing Proper. There being, in an action for death, evidence of a substantial nature tending to justify punitive damages, evidence of defendant's financial standing was admissible.

11. **APPEAL AND ERROR:** Disregard of Instruction Cannot be Assumed. It cannot be assumed that there was disregard of an instruction that, if plaintiff was not entitled to punitive damages, evidence of defendant's financial standing should be disregarded.

12. **EVIDENCE:** Judicial Notice Taken of Mortality Tables. Courts will take judicial notice of mortality tables.

13. **DEATH:** Verdict Over .$3000 for Death of Aged Husband Excessive. Verdict in an action for death, considering the age of deceased, sixty-four years, his poor health and physical condition, his earnings, and the fact that he left no minor children, but only a widow, *held* excessive so far as exceeding $3000.

Appeal from the Iron County Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED (*On Condition.*)

*Jerry B. Burks* for appellant.

It is well settled that where an injury complained of may have resulted from several causes, any one of which the party sued is not liable for, then it is incumbent on the party suing to show with reasonable certainty that the cause for which the party is liable produced the result. Plaintiff wholly failed to so certainly prove that defendant killed deceased by striking or choking. Smart v. Kansas City, 91 Mo. App. 586, 591-2; Morgan v. Durfree, 69 Mo. 476; DeMaet v. Fidelity Storage Co., 121 Mo. App. 105; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202; Warner v. St. Louis M. & E. Ry., 178 Mo. 125; Powell v. Electrical Co., 195 Mo. App. 150; Kelly v. U. P. Ry., 141 Mo. App. 490.

*Edgar & Edgar* and *O. L. Munger* for respondent.

(1)  Morgan v. Durfee, 69 Mo. 469, cited by appellant, is in no wise a parallel case.  In the case at bar plaintiff's evidence shows that after knocking down the deceased, defendant "straddled" him and beat and choked him with sufficient strength to cut deceased's neck with his (defendant's) finger-nails.  To attempt to plead selfe-defense under circumstances is ridiculous.  (2) In citing the case of DeMaet v. Fidelity Storage Co., 121 Mo. App. 92, appellant evidently failed to note that this case was by Judge Goode certified to the Supreme Court of our State, and in an opinion by Judge Graves it was held that the evidence as to cause of death was sufficient to justify the submission of the question to the jury.  DeMaet v. Storage Co., 231 Mo. 615.

BRADLEY, J.—Plaintiff, the widow of Frank B. Cole, sued to recover for the death of her husband, alleged to have been wrongfully caused by defendant.  In her petition plaintiff asked for both actual and punitive damages.  The cause was tried before the court and a jury, and resulting in a verdict and judgment for $5000 for actual damages.  Defendant duly filed motions for new trial and in arrest, and these being overruled, he appealed.

Plaintiff alleged that on July 18, 1919, in Iron county defendant unlawfully, maliciously and intentionally, and without just cause, struck, beat and choked her husband, causing his death; that she was dependent upon her husband for support, and that by said wrongful acts of the defendant she was actually damaged in the sum of $5000, for which she asked judgment, and there was a prayer for punitive damages in the sum of $5000.  Defendant answered by general denial, and further that at the time of the difficulty plaintiff's husband came to the home and premises of defendant and voluntarily sought

and brought on the difficulty, and assaulted and struck defendant without just cause or provocation, and that any injury inflicted upon plaintiff's husband at the time was for the sole purpose of resisting said assault and in the necessary defense of the person and home of defendant; and that if plaintiff's husband died from the result of any injury inflicted by defendant that such was due to the wrongful acts and conduct of plaintiff's husband. The reply was a general denial of new matter.

The alleged difficulty occurred on July 18, 1919, in defendant's yard. Plaintiff and her husband at the time were living on defendant's place, the deceased being in the employ of defendant, and had been for some seven or eight months. Plaintiff and her husband lived in a tenant house on defendant's farm, this tenant house being a little West, and on the opposite side of the public road, and some 120 yards from defendant's house. Deceased did odd jobs about the premises, and his income was about $25 per month, and in addition he had the house in which he lived, a garden and cow pasture free of rent. The deceased was 64 and defendant 70 years of age. No one except the parties was present at the time of the difficulty. Plaintiff testified that she was at home sitting by the window, and was sewing, and that she observed defendant and her husband in defendant's yard, that her husband was sitting on the ground and a dog was lying by him, and that defendant was sitting in a chair; that they were to the front like of defendant's house, between the house and the gate; that she got up for some purpose, and in about ten seconds thereafter she heard the dog bark, and that she looked out the window and that defendant had her husband down on the ground and was over him beating him with his fist, and that immediately after that he put his hands down over his neck "that way, and was choking him." That she ran as fast as she could to the scene of the difficulty, and that when she got there defendant was try-

ing to get her husband to a chair, and that her husband's neck was bleeding, and that blood was dropping down on his shirt; that she asked defendant "what have you done?," and that he said "he is not hurt much," that she asked defendant what made her husband's neck bleed, and that defendant said that his nails cut into it when he choked him, and that she afterward examined her husband and that he had three bruises in the region of the heart, and that his throat was swollen immediately after the difficulty. There was testimony by one witness concerning a conversation with defendant in which conversation defendant said something about putting his knees on deceased's hand. There was other evidence also in addition to that of plaintiff, tending to show that one could see the scene of difficulty from the window where plaintiff was sitting. Defendant's evidence tended to show that deceased brought on the difficulty, and that all he did was in self defense. Deceased became paralyzed in his right side either during or immediately after the difficulty. Defendant says that he assisted deceased to get up, and assisted him to the chair and that deceased said to him "you hurt my arm." Deceased immediately became unconscious and died without regaining consciousness or making a statement. The post mortem disclosed a blood clot on the brain which the expert evidence tended to show might have been caused, considering the age and physical condition of deceased, by anger, excitement or exertion. No weapon was used, and no claim that there was or might have been.

Defendant makes in effect the following assignments: (1) That his demurrer at the close of the case should have been sustained; (2) that the court erred in the instructions; (3) that error was committed in the admission of evidence; (4) that the verdict is excessive.

(1). As stated the evidence offered by defendant tended to show that whatever injury he may have caused deceased was occasioned in the necessary defense of his person. There is no claim that deceased

was a trespasser. Only a short time prior to the difficulty defendant had beckoned deceased to come over. Deceased went, and defendant advised him that he, defendant, wanted deceased to go to a near by railroad station to meet and bring home defendant's wife who would arrive at the station that afternoon at 6:30. It seems that deceased then went away a short time something like an hour or more seeing about the team he would drive to the station. Deceased returned after seeing about the team and he and defendant were talking over a settlement, and the difficulty came up over this settlement. Defendant says that when deceased came back after seeing about the team that he saw that he was mad. Defendant at the time was not well. "When he came up I saw he was mad, and I was sort of lying down there in my chair and he came up and began asking about some money that was due him." The evidence shows that they talked over the money matters and settled that. Defendant says that then deceased "jumped on" him about some water gates deceased had made, and then about a meadow and that they talked for awhile about the meadow. "He commenced walking up and down in front of me and says, 'by God you do all your business through my woman' and I thought I knew what he had reference to, and he says, 'I want you to understand if you have any propositions to make you make them to me.' I was asking Mrs. Cole if they would stay there during the summer as I wanted to take Mrs. Long up to the lakes. Mr. Cole says, 'by God, I am the head of the family and I want you to do your talking to me' and he made several other bad remarks and I raised and he struck at me and grabbed at me, and when he did that I raised right up close to him and struck him on the jaw, and he fell over. Yes, sir, he called me a son of a bitch. Q. Were you sitting down. A. Yes, sir. Q. What was his attitude just before making this grab at you? A. He looked at me like a bull dog, and made these threatening remarks, and of course after he made the assault on me and struck at me I grabbed him and struck him and he

fell, and after he was down I started to raise him up, and I said 'Will you apologize,' and he said 'Yes, sir.' Q. You never struck him after he was down? A. No, sir, I don't strike a man when he is down. When he fell down, I took hold of him by the neck and raised him up and asked him if he would apologize and he said he would. After I helped him up he walked to a chair five or six steps away and sat down. When he got to the chair, I said 'are you going to apologize? There is an apology due Mrs. Cole and myself,' and Mrs. Cole came up there and when she got there he was unconscious." On cross-examination defendant was asked: Q. "Why did you get down on him? A. In my angry rush I suppose." If defendant got down on deceased, pinioned his hands, and choked and beat him after he had knocked him down as the evidence tends to show, then he used more force than was necessary to repel any attack that deceased made. Deceased was an old, an infirm man, weight not over 125 pounds, and the doctor who conducted the post mortem stated that deceased was much undernourished. Defendant, too, was an old man, older than deceased, but in his "angry rush" he exhibited considerable strength and vigor. Defendant urges that the evidence shows that deceased was susceptible to appoplexy, and that it is as reasonable to say that he died from appoplexy due to a fit of anger and excitement before defendant touched him as to say that he died from anything that defendant may have done. This contention is urged under the rule, that where an injury complained of may have resulted from several causes for any one of which the party sued is not liable that then it is incumbent on the party suing to show with reasonable certainty that the cause for which defendant is liable produced the result. We think, however, under the facts disclosed here that it was a question for the jury to determine whether the injury complained of was caused by defendant. The physician who was called before deceased died, and who held the post mortem was asked: "Q. I will ask you to state if a person was

struck a blow in the jaw sufficient to fell him to the ground, and upon falling to the ground on his back, another man were to attack him and there was a struggle and the party would hold his hands while he was resisting and take him by the throat, and if after that, and immediately upon arising to his feet he complained of a peculiar feeling in his right arm, and immediately thereafter lost consciousness and use of the right arm and right leg and it continued that way, wouldn't you say that had something to do with his condition, and that his artery must have been ruptured there? A. It must have ruptured there somewhere. Q. Under these conditions, the man lying on his back, on the ground, he would be subject to high blood pressure in the brain? A. It would subject him to high excitement. Q. And this high blood pressure would cause a greater danger of a rupture of this blood vessel? A. Yes, sir. Q. Now, it is conceded that a blow with the fist in the neighborhood of the heart will materially retard the action of the heart? A. Yes, sir; whether that would be followed by increased blood pressure would depend upon the blow. Q. If there was a material retarding of the blood and the action of the heart, wouldn't that be followed by an increased action of the heart? A. As soon as reaction set in, it would be faster than normal. Q. If after this man had fallen to the ground, another man took him by the throat with one hand that had sufficient strength to cut his finger nails through the skin, wouldn't that tend to increase the blood pressure on account of the involuntary resistance to that? A. Yes, sir, I think it would." Defendant relies on Morgan v. Durfree, 69 Mo. 469, to support his contention that his demurrer to the evidence should have been sustained. The facts in that case are quite unlike the facts in the case at bar, and we do not find any case that supports defendant in his contention that his demurrer should have been sustained, and we rule that the demurrer was properly denied.

(2). In his brief defendant challenges instructions one, two and three given at plaintiff's request, and complains of the refusal of his instruction B. In instruction one the court instructed that if the jury found from the evidence that the defendant without just cause or provocation struck, beat or choked the deceased, and that as a result of said beating and choking the deceased died, then said killing was wrongful, and that the verdict, if these facts were found, would be for plaintiff. The point that defendant makes is that it should have been left to the jury to say whether such killing was wrongful, although they found the facts predicated in the instruction. We do not agree with defendant in this contention. If the jury found the facts predicated then the killing was wrongful, and it was the duty of the court to so state. If the instructions had been worded as defendant contends then clearly a question of law would have been submitted to the jury. The complaint lodged against instruction two is that it is too broad, and is misleading, that it does not confine the jury to a consideration of the actual damages for which purpose it was intended. By this instruction the court told the jury that if they found for plaintiff "you may in your verdict give her such damages, not exceeding five thousand dollars, as you may deem fair and just under the evidence in the case with reference to the *necessary injury* (italics ours) resulting to her from the death of her husband." The point is that the instruction was too broad and was misleading because of the fact that plaintiff was also asking for punitive damages. Defendant says that *necessary injury* was under the circumstances, equivalent to saying just *any injury*, "anything to fatten the average." The challenged portion of the instruction followed the statute, section 4219, Revised Statute 1919. In Browning v. Railroad, 124 Mo. 55, 27 S. W. 644, it was held in an action by a widow for the death of her husband that an instruction to assess her damages at such sum as would be "a fair and just compensation to her for the loss of her husband not exceeding," etc.,

was not erroneous in its general scope, and that where no more definite instruction was asked by the losing party that reversible error was not committed. The Browning case in this respect has been followed in a great number of cases, some of which are cited in Green v. United Rys., 200 Mo. App. l. c. 303, 206 S. W. 237. Defendant asked no more definite instruction and is, therefore, in no position to complain.

Instruction three is on punitive damages. Defendant contends that it was error, under the facts and circumstances in evidence, to give an instruction on punitive damages, and that this instruction assumes that plaintiff was entitled to compensatory damages. The instruction is as follows: "In case the jury shall find from the evidence that the beating or choking of plaintiff's husband by the defendant caused the death of the plaintiff's husband, and shall further find that said beating and choking was wrongfully done in a spirit of revenge, or in a reckless and vindictive spirit, or in a spirit of hatred, ill will or malice, and without reasonable cause or just provocation or excuse, then the jury, in assessing plaintiff's damages, are not restricted to the actual loss sustained by the plaintiff from the death of her husband, but the jury may award her such punitive and exemplary damages as they may think under the circumstances, fair and just in addition to the actual loss resulting to her from her husband's death; provided that the whole amount shall not exceed ten thousand dollars." This instruction might possibly be construed as assuming that plaintiff had sustained an actual loss or pecuniary injury, but it does not assume that she was entitled to recover therefor. Defendant did not controvert the fact that plaintiff had been actually damaged, his defense was that he was not responsible. It is not error to assume as true a fact about which there is no conflict in the evidence. [Price v. Railroad, 185 Mo. App. 432, 170 S. W. 925.] Defendant says that this instruction is bad in that it so intermingles, mystifies and muddles matters of exemplary and pecu-

niary damage as to confuse the minds of the jury. An instruction quite similar was in Gray v. McDonald, 104 Mo. 303, 16 S. W. 398. The instruction there was not challenged, but if it had been such as to confuse the jury as defendant here contends it would not likely have gone unchallenged. We can discover nothing in this instruction which could confuse. The only fault that we see in the instruction is that it possibly might be construed as assuming that plaintiff had sustained on actual loss. Defendant further urges as to this instruction that under the evidence it was error to instruct on punitive damage. In answer to this the record shows that the jury found no punitive damage. Defendant recognizes such, but says that under the rulings in Traw v. Heydt, 216 S. W. (Mo. App.) 1009, it cannot be said that the instruction was harmless for the reason that no punitive damages were found. The instruction condemned in that case is quite unlike the one under consideration, and we do not regard that case as supporting defendant's contention. Defendant urges that the court erred in refusing his instruction B. This instruction was a direction that plaintiff could not recover punitive damage. What we have already said disposes of this assignment.

(3). It is urged that error was committed in the admission of evidence. The evidence complained of was that touching the financial standing of defendant. Evidence was admitted to show what property defendant possessed. Defendant objected to this evidence, and it being admitted over his objection, he saved his exception. It is held in Morgan v. Durfree, supra, that the pecuniary standing of the defendant in a cause like the one here is not a proper subject of inquiry as bearing upon the question of damages where there are no aggravating circumstances and no punitive damages recoverable. [See, also, Berryman v. Cox, 73 Mo. App. 67.] We cannot say that there were no aggravating circumstances or malice which the law requires to be shown before punitive damages may be awarded. We recognize that

the evidence tending to justify punitive damages was meager, but if there was any of a substantial nature then defendant's pecuniary standing was a proper subject of inquiry. Also it appears that the defendant asked and the court gave an instruction that the financial standing of the parties could only be considered for the purpose of fixing the amount of punitive damages, if any, and that if the finding was that plaintiff was not entitled to such damages then the jury would disregard all such evidence. No punitive damages were found, and we cannot assume that the jury disregarded this instruction.

(4). Defendant contends that the verdict is excessive. The evidence shows that deceased was earning $25 per month, and in addition was furnished a house, garden and cow pasture. There is no showing what the reasonable rental of the house, garden and cow pasture was worth. The Kansas City Court of Appeals in Chambers v. Hotel Co., 154 Mo. App. 249, 134 S. W. 45, mentions those things that should be considered in measuring the pecuniary loss of a plaintiff in a cause like the one at bar. It is there said that the age, expectancy, health, habits, business capacity, etc., of the deceased husband were admissible where the pecuniary loss suffered in consequence of the death of the husband was an important issue, and it is also stated in that case that such issue involves the age, expectancy and state of health of the surviving spouse who is suing. The court says that the rule is correctly stated in Railway v. Moffatt, 60 Kans. l. c. 119, as follows: "Mathematical accuracy in measuring the pecuniary loss suffered is not practicable, and in general it may be said that the basis for the allowance of damages may be found in the character, habits, capacity, business and condition of the deceased, as well as the age, sex, circumstances and condition in life of the next of kin. The court is of the opinion that with the elements thus furnished the jury may make a fair estimate of the damages that are recoverable." The mortality tables were not offered in evi-

dence in the instant case, but the courts will take judicial notice of these tables. [Stevens v. Light & Power Co., 200 Mo. App. 651, 208 S. W. 630.] The age of deceased was shown to be 64 and that of plaintiff 61. There was no showing as to plaintiff's health, but there was evidence concerning the health and physical condition of deceased. The physician who held the post mortem said that he understood that deceased was 64 years of age, but that he appeared to be much older, that he was small sized and poorly nourished, and that from his general condition and the condition of his arteries as shown by his examination that in his opinion deceased would not have lived very long. He also stated that he found a diseased condition of the cerebral artery. The record also shows that there were no minor children. We think that this verdict is excessive to the extent of at least $2000. In view of our conclusion the cause will be affirmed, if within ten days from the filing of this opinion, plaintiff will file here a remittitur of $2000, otherwise the cause will be reversed and remanded. *Farrington, J.,* concurs. *Cox, P. J.,* not sitting.