**Lloyd J. COLLINS and Betty O. Collins, Plaintiffs-Appellants,**

**v.**

**WEST PLAINS MEMORIAL HOSPITAL, Defendant-Respondent.**

No. 14882.

Missouri Court of Appeals,
Southern District,
Division Two.

July 23, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Aug. 13, 1987.

Application to Transfer Denied
Sept. 15, 1987.

John S. Pratt, Pratt & Fossard, Springfield, for plaintiffs-appellants.

Gail L. Fredrick, Freeman, Fredrick, Bennett and Rogers, P.C., Springfield, for defendant-respondent.

PREWITT, Presiding Judge.

Plaintiffs sought damages for the wrongful death of their son, Terry Collins. They contended that he died as a result of defendant's negligence after he was taken to defendant's emergency room for treatment of a gunshot wound to his abdomen. Following a jury verdict in favor of defendant, judgment was entered accordingly. Plaintiffs appeal.

For their first point plaintiffs contend that the trial court erred in failing to strike for cause four veniremen. The potential jurors each indicated they believed they could fairly hear the matter in an impartial manner.

One of the veniremen, Wilma Puckett, stated that she was employed at Travenol Labs in West Plains as an assembler of hospital products and that defendant purchased items from Travenol Labs. Earlier the week of trial her son was treated by Dr. Terryl Mackey, a potential witness for defendant, who was not called to testify, and she had talked with her. Mrs. Puckett stated that she, her husband, her mother-in-law and her daughter-in-law had been treated at defendant hospital.

Venireman Gary Carter also was employed at Travenol Labs and he was acquainted with Dr. Michael Moore, an expert witness who testified for defendant. He stated that Dr. Moore had treated him, his wife, and their children. Venireman Barry Randolf had taken his son to Dr. Moore for minor illnesses. Venireman Robert Whittington had been treated at the emergency room by Dr. Terryl Mackey and a child of his was born in defendant hospital.

Plaintiff does not contend that any statutory challenge to these veniremen existed. The trial judge is vested with broad discretion in ruling on nonstatutory challenges and that decision is not overturned unless there is a clear abuse of that discretion; any doubts are resolved in favor of the trial judge's decision. *State v. Reynolds*, 619 S.W.2d 741, 749 (Mo.1981).

Even though a juror has some business or personal relationship with a party, the trial court has broad discretion in determining the qualifications of such veniremen to sit as jurors and its rulings are not disturbed on appeal unless they are clearly and manifestly wrong. *Golden v. Chipman*, 536 S.W.2d 761, 765 (Mo.App.1976) (upholding refusal to dismiss for cause venireman whose son was employed by defendant's counsel).

The cases which plaintiff cites contending that the relationship of these veniremen to defendant was such that they should have been stricken for cause are distinguishable. In *Murphy v. Cole*, 338 Mo. 13, 88 S.W.2d 1023 (1935), the venireman was a local agent of defendant's liability insurance carrier. That carrier, of course, would have a substantial interest in the outcome of the case. Here, none of the veniremen were agents or employees of a

party with an interest in the case. In *McFall v. St. Louis & S.F.R. Co.*, 185 S.W. 1157 (Mo.App.1916), the juror excused was a local freight agent who had to deal with the same questions as were at issue in the case. No one here professed to be an expert in any of the matters in controversy. In *Edmonds v. Modern Woodmen of America*, 125 Mo.App. 214, 102 S.W. 601 (1907), the trial court properly excluded members of a fraternal benefit society whose assessments could be effected by the result. Here, there is no indication that any of the veniremen would be financially affected by the outcome.

Numerous cases have indicated that some business connection with a party is not a ground requiring disqualification to serve on a jury. In *Joyce v. Metropolitan St. Ry. Co.*, 219 Mo. 344, 118 S.W. 21, (1909), the court said that it was error to excuse for cause a juror who was a "contracting freight agent" for a railroad who solicited business from street railroads including the defendant.

In *Kennedy v. Holladay*, 105 Mo. 24, 16 S.W. 688 (1891), a new trial was held properly refused although defendant consummated a mule trade with a juror during the trial and treated two jurors with oysters during a recess in the trial. In *Murphy v. Fidelity Nat. Bank & Trust Co.*, 226 Mo. App. 1181, 49 S.W.2d 668 (1932), a prospective juror was employed in a meat market which occasionally sold meat to the wife of one of plaintiff's attorneys and to a person who had "some connection" with that attorney's office. The court held that it was not error to refuse to strike him.

The relationship that the challenged veniremen had to defendant was not so direct that their disqualification was required. The trial court's action in not striking them was not a clear abuse of discretion. Point one is denied.

Plaintiffs state in their second point that the trial court erred "in reassigning the case to the 37th Judicial Circuit on March 28, 1983, and in each and every ruling and action after March 28, 1983," because the matter was assigned to Judge "John Brackman to preside and said order was never

vacated, amended, or modified by the Supreme Court, therefore making a nullity the actions of the presiding judge of the 37th Judicial Circuit" who presided over the trial. Defendant's brief treats that point as having been abandoned by plaintiffs but there is no direct expression of abandonment in this court's files.

In the supplemental legal file filed by plaintiffs after they filed their brief, is a certified copy of an order of the Missouri Supreme Court entered on the 25th day of March 1983, assigning the handling of this case from Judge Brackman to Judge Holstein. As this order appears valid and is not challenged, it appears that Judge Holstein properly proceeded to preside over this matter. The point is denied.

Plaintiffs assert for their third point that the trial court erred in refusing to permit them to read into evidence certain portions of defendant hospital's records without first offering them into evidence. Plaintiffs say this was erroneous as it "improperly permitted the jury to infer and conclude that plaintiffs were vouching for the accuracy and veracity of defendant's records, when, in fact, plaintiffs' case against defendant was based upon being able to prove that portions of the records were false as they related to the time when decedent was brought to the defendant hospital and the timeliness of care and treatment." At the commencement of plaintiffs presenting evidence, the following occurred:

MR. PRATT [plaintiffs' attorney]: Your Honor, I would like to read from the emergency room records consisting of Plaintiff's Exhibits 1 and 2.

THE COURT: Are you offering those at this time?

MR. PRATT: No. I'm asking to read these as admissions, Your Honor.

THE COURT: Objections to him reading from Exhibits 1 and 2?

MR. FREEMAN [defendant's attorney]: Just a moment, Judge. Let me look them over.

I don't think they are into evidence and I would object until they are placed into

evidence of any reading from them but let me—what do you show as Exhibits 1 and 2?

MR. PRATT: One is the outpatient emergency room record and two is the x-ray report.

THE COURT: You're going to have to offer them before you may read from them.

We doubt that the jury was sophisticated enough in legal proceedings that it or any member might "infer and conclude" that plaintiffs were vouching for the accuracy of defendant's records. However, we proceed to analyze this point further. It appears that the trial court was requiring that the records be authenticated and in evidence before anything be read from them. This was a proper requirement. The authenticity of a document cannot be assumed, what it purports to be must be established by proof. *United Factories v. Brigham*, 117 S.W.2d 662, 665 (Mo.App. 1938); Missouri Evidence, Third Edition, The Missouri Bar (1980), § 10.1; McCormick on Evidence, § 218, pp. 684–687 (3d ed. 1984). See also *Davison v. Farr*, 273 S.W.2d 500, 504 (Mo.App.1954) ("general rule is that execution of a private writing must be established before it may be admitted in evidence"). Of course, the authenticity can be agreed upon and certain documents can be admissible if properly certified or otherwise proved, see ch. 490, RSMo 1986.

Plaintiffs assert that "had Plaintiffs not been required to offer into evidence the medical records, Plaintiffs would have read only those portions of the record which benefited Plaintiffs' case". Plaintiffs say they could not do so because it would look to the jurors "that Plaintiffs were only disclosing a *part* of the record" (emphasis by plaintiffs). Plaintiffs also state in their brief that "the procedural hamstring placed upon Plaintiffs by the trial court made the risk of partial reading of the medical records too great."

We fail to see how the trial court's ruling prejudiced plaintiffs. If plaintiffs obviously only read a part of a document, that could be apparent to the jury whether or not the document was introduced into evidence. Plaintiffs concluded their argument under this point in their brief by stating that the "Court should have permitted the Plaintiffs to read such portions of the medical records as Plaintiffs desired *in Plaintiffs' case* and then permitted Defendant to read such portions as it desired *in Defendant's case*" (emphasis by plaintiffs). We find no indication in the record that the trial court prevented the plaintiffs from reading whatever portion of the records that they wished.

The trial court's procedure was correct in requiring that the records be in evidence before plaintiffs read from them and no prejudice to plaintiffs is shown in its ruling. This point is denied.

■ For their fourth point plaintiffs state that the trial court erred in permitting defendant's counsel to ask during cross-examination of decedent's mother, plaintiff Betty Collins, if decedent had been convicted of a crime. They contend "that such evidence was vague, remote, irrelevant, and immaterial ... and was highly prejudicial in that it portrayed the decedent to the jury as a heinous criminal."

Prior to trial the trial court sustained plaintiffs' motion in limine seeking to prevent defendant from inquiring or making comments as to the criminal conviction of the decedent. During cross-examination of Mrs. Collins the transcript shows the following:

MR. FREDERICK: [sic] [Defendant's attorney] In the Court's [sic] motion in limine, the Court had indicated that we could not get into the criminal record of Terry Collins. It's our belief that that issue has been opened.

THE COURT: I think that's correct. She testified as to the areas of good character and conduct such as he volunteered for Vietnam and he had special talents and he sang at church and at funerals and never back talked his parents. I think you've gone into character and I'm going to let you into the others.

MR. FREDERICK: [sic] Thank you, Your Honor.

[The following proceedings were had in open court.]

Q. Ma'am, was Terry Collins, your deceased son, ever convicted of a crime?

MR. PRATT: [Plaintiffs' attorney] Your Honor, at this time I object on the basis that it's immaterial and irrelevant to any issue in this case.

THE COURT: Overruled.

Q. Tell the jury, please, was Terry Collins ever convicted of a crime?

A. Yes, he was.

Q. And what crime was that?

A. He was accessory to a robbery.

Earlier plaintiffs had presented evidence as to decedent's military and educational background and his employment after he "came back from the Army". His mother testified that he helped with their farming operation, paid some of the grocery and utility bills, bought feed for their cows and "never back talked" his parents. She testified that their family quartet, of which decedent was a member, sang at funerals and revivals [1].

Neither party cites any authority dealing with evidence of criminal convictions, character, or damages, in wrongful death cases. Plaintiffs cite only *Wood v. St. Louis Public Service Co.*, 362 Mo. 1103, 246 S.W.2d 807 (banc 1952), a personal injury action, and Missouri Evidence, Third Edition, The Missouri Bar (1980), § 12.1. Chapter 12 of Missouri Evidence deals with "Relevancy—In General" and the cited section "Test of Relevancy". Defendant cites only *State v. Wolfe*, 343 S.W.2d 10 (Mo. banc 1961), *cert. denied*, 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed.2d 1246; 368 U.S. 907, 82 S.Ct. 188, 7 L.Ed.2d 101 (1961), where defendant was charged with statutory rape, and *Weller v. Provow*, 220 Mo.App. 1283, 290 S.W. 1017 (1927), a slander action for calling plaintiff "a mean woman".

In measuring pecuniary loss in a wrongful death action the trier of fact may consider the character of the deceased. *Dowell v. City of Hannibal*, 200 S.W.2d 546, 559 (Mo.App.1947), *rev'd on other grounds*, 357 Mo. 525, 210 S.W.2d 4 (1948); *Chambers v. Kupper-Benson Hotel Co.*, 154 Mo.App. 249, 134 S.W. 45, 49 (1911), Pamela S. Wright, Damages under the Mis-

souri Wrongful Death Act, 37 J.Mo.B. 92, 95–96 (1981); Joseph J. Russell, Measure of Damages under Missouri Wrongful Death Act, 15 Mo.L.Rev. 31, 37, 43 (1950); 22 Am.Jur.2d Death § 140, p. 708 (1965). See also *Grothe v. St. Louis-San Francisco Railway Co.*, 460 S.W.2d 711, 718 (Mo. 1970) ("In a death claim it is proper to show conditions such as health, earning capacity, age, and habits of the deceased."); *Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 917 (Mo.App.1985) (evidence of deceased's acts of violence not erroneous in wrongful death action).

As evidence of decedent's character was relevant, at least if it was not too remote, and plaintiffs make no claim of remoteness, a criminal conviction could bear on his character and be admissible. The trial court did not err in allowing evidence of decedent's conviction. This point is denied.

Plaintiffs assert in their remaining point that the trial court erred in sustaining defendant's motion in limine which prevented plaintiffs from disclosing to the jury the existence of a minor child who was born to decedent following his death "for the reason that the obligation of the decedent for the support of the minor child is relevant and material on the issue of damages."

Plaintiffs claim that decedent was the father of a child born after his death to a woman to whom decedent was not married. Plaintiffs contend that since he owed the child a duty to support, its existence would be relevant to damages and to decedent's "family circumstances". It is not necessary to decide whether plaintiffs could recover damages that the child, who has not been a party to this action, might be entitled to recover. See § 537.095, RSMo 1986 (not cited by either party).[2]

Plaintiffs contend that evidence of the child was relevant on the issue of damages. Plaintiffs' submission instruction did not require the jury to find that they were damaged before deciding liability in their favor. Damages were to be considered pursuant to another instruction. As the

---

**1.** Evidence that an eight-year-old girl had blond hair, big eyes, rosy cheeks and a fair, natural complexion; that she had a good voice and could sing well was held admissible in an action

for wrongful death. *Smiley v. Reid Ice Cream Corp.*, 5 N.J.Misc. 82, 135 A. 504 (1927).

**2.** Subsections 1 and 2 of § 537.095, RSMo 1986 state:

liability question was found in favor of defendant, the jury did not reach the issue of damages. Error is harmless if it relates solely to the issue of damages and the jury never reaches that issue. *Guthrie v. Missouri Methodist Hospital,* 706 S.W.2d 938, 943 (Mo.App.1986). If any error existed as claimed in this point, a question not necessary to decide, it was harmless. Only error "materially affecting the merits" calls for reversal. Rule 84.13(b). This point is denied.

The judgment is affirmed.

HOGAN, FLANIGAN and MAUS, JJ., concur.

1. Except as provided in subsection 2 of this section, if two or more persons are entitled to sue for and recover damages as herein allowed, then any one or more of them may compromise or settle the claim for damages with approval of any circuit court, or may maintain such suit and recover such damages without joinder therein by any other person, provided that the claimant or petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under section 537.080. Any settlement or recovery by suit shall be for the use and benefit of those who sue or join, or who are entitled to sue or join, and of whom the court has actual written notice.

2. When any settlement is made, or recovery had, by any plaintiff ad litem, the persons entitled to share in the proceeds thereof shall be determined according to the laws of descent, and any settlement or recovery by such plaintiff ad litem shall likewise be distributed according to the laws of descent unless special circumstances indicate that such a distribution would be inequitable, in which case the court shall apportion the settlement or recovery in proportion to the losses suffered by each person or party entitled to share in the proceeds and, provided, that any person entitled to share in the proceeds shall have the right to intervene at any time before any judgment is entered or settlement approved under this section.