Janice E. MORRIS and Larry
Morris, Appellants,

v.

Donald M. SPENCER, Respondent.

No. WD 44394.

Missouri Court of Appeals,
Western District.

Jan. 7, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 3, 1992.

Application to Transfer Denied
April 21, 1992.

Michael W. Manners, Independence, for appellants.

Thomas W. Wagstaff, Kansas City, for respondent.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

Appellants, Janice and Larry Morris, appeal adverse judgments, after trial by jury, on their claims against respondent, Donald Spencer, M.D. Appellants had alleged that Dr. Spencer aggravated an injury to Janice Morris' knee.

In their sole point on appeal, appellants argue that the trial court erred in overruling their challenge, for cause, to two venirepersons. Appellants complain that the trial court should have conducted an independent inquiry into the competency of the

venirepersons in question to serve as jurors because they had personal and business relationships with Dr. Spencer.

The decision to remove a venireperson for cause on a non-statutory basis is left to the sound discretion of the trial court and that decision is not to be overturned unless there is a clear and certain abuse of that discretion with any doubts resolved in favor of the trial judge's discretion. *Collins v. West Plains Memorial Hospital*, 735 S.W.2d 404, 405 (Mo.App. 1987). Even though a juror has some business or personal relationship with a party, the trial court has broad discretion in determining the qualifications of such venirepersons to sit as jurors and such discretionary rulings are not to be disturbed on appeal unless they are clearly and manifestly wrong. *Id.*[1]

The trial judge is in a far better position to make a determination as to the qualifications of a potential juror than an appellate court, as that determination necessarily involves a judgment of the demeanor of the venireperson. *State v. Johnson*, 721 S.W.2d 23, 29 (Mo.App.1986). However, when a venireperson makes an equivocal response an appellate court is justified in making a more thorough review of a challenged juror's qualifications. *Catlett v. Illinois Central Gulf Railroad*

1. There are numerous Missouri cases that uphold the trial court's decision overruling challenges for cause where a juror acknowledges some business or personal relationship with a party or witness, but there is no showing of actual bias or prejudice.

In *Collins*, 735 S.W.2d at 405, there was no error when the trial court failed to strike for cause venirepersons who had been patients at the defendant's hospital, had family members who had been treated at the hospital, and further had been patients of or had family members who had been patients of doctors who would testify as experts on behalf of the hospital. The Court, on appeal, noted that the venirepersons stated they believed they could fairly hear the matter in an impartial manner. In *State v. Johnson*, 721 S.W.2d 23, 31 (Mo.App. 1986), the trial court was found not to have abused its discretion by failing to excuse a venireperson who was a good friend of a doctor who would appear as an expert witness in the trial, in light of the venireperson's statement

that he would not consider the doctor's testimony more highly. In *State v. McGrew*, 534 S.W.2d 549, 550–551 (Mo.App.1976), it was not error for the trial court to fail to excuse a venireperson who said he was a good friend of the victim in the case. In *McGrew* at 551, the court held that friendship alone is not sufficient to disqualify a venireperson. In *Golden v. Chipman*, 536 S.W.2d 761, 764–765 (Mo.App.1976), there was no error found by the trial court's failure to remove a venireperson whose son was employed by the defendant's attorney's law firm because there was no showing of actual bias or prejudice. In *Grimm v. Gargis*, 303 S.W.2d 43, 49–50 (Mo.1957), it was held that the trial court did not err by refusing to strike a venireperson for cause who had been a friend of the plaintiff for thirty years and had seen the plaintiff while the plaintiff was in the hospital recovering from injuries, which were the subject of the cause before the court. Once again, the venireperson stated that he could serve as a fair and impartial juror.

*Company,* 793 S.W.2d 351, 353 (Mo. banc 1990).

In the case at bar, the responses of venirepersons Thornburg and Carson are called into question. The record reflects the following relevant exchanges during voir dire between counsel for appellant and venireperson Thornburg:

COUNSEL: Okay, I believe it was—and you are?

VENIREPERSON THORNBURG: Sandra Thornburg.

COUNSEL: Okay. Ms. Thornburg, do you know Dr. Spencer?

VENIREPERSON THORNBURG: Yes. He—I used to be a patient of his.

COUNSEL: And, how long ago was that?

VENIREPERSON THORNBURG: I haven't seen him for fifteen years.

COUNSEL: Okay. When you were a patient of his, what kind of medical problem did you have?

VENIREPERSON THORNBURG: Back surgery.

COUNSEL: Okay. Did that come out to your satisfaction?

VENIREPERSON THORNBURG: Yes.

COUNSEL: Okay. Were you generally pleased with the care that Dr. Spencer provided you?

VENIREPERSON THORNBURG: Yes.

COUNSEL: Having been treated by him in the past, 15 years ago, and knowing Dr. Spencer as a patient would know a doctor, do you think that that would affect your ability to stand in judgment of him since he's being sued in this case today?

VENIREPERSON THORNBURG: No.

COUNSEL: Do you think you could be fair to both sides in the case even though you've known Dr. Spencer as a patient?

VENIREPERSON THORNBURG: Yes.

The pertinent questions by appellant's counsel and answers by venireperson Carson were as follows:

VENIREPERSON CARSON: I was a patient of Dr. Spencer.

COUNSEL: And you are?

VENIREPERSON CARSON: George Carson.

COUNSEL: Mr. Carson, how long ago was that?

VENIREPERSON CARSON: Nine years ago.

COUNSEL: And what kind of medical problem did you have?

VENIREPERSON CARSON: I had a work-related injury that he treated me for.

COUNSEL: Did you choose him, or did your employer choose him?

VENIREPERSON CARSON: I chose him.

COUNSEL: Okay. Had you heard about him before you went to see him?

VENIREPERSON CARSON: Yes. He's been a friend of the family for a number of years.

COUNSEL: Okay. So you've known of him before you went to see him as a doctor?

VENIREPERSON CARSON: Yes I had.

COUNSEL: Would you tell me a little bit how you—when you say he's a friend of the family, would you tell me a little bit about that?

VENIREPERSON CARSON: He went to school with my uncle, and there are several members of my family that have gone to him for treatment.

COUNSEL: I take it then you think a lot of Dr. Spencer?

VENIREPERSON CARSON: Yes, I do.

COUNSEL: Having some feelings about Dr. Spencer, having been his patient and knowing him and his family for quite some time and he knowing your family, do you think that would have a tendency maybe, to the slightest degree even, affect your ability to hear the evidence in this case?

VENIREPERSON CARSON: No, I don't believe it would.

COUNSEL: Put yourself in Janice and Larry Morris' shoes, in the reverse role, do you think that you could do that and consider the evidence and still be fair to Larry and Janice Morris.

VENIREPERSON CARSON: Yes, I believe I could.

\* \* \* \* \* \*

The following general questions were also asked during voir dire:

COUNSEL [for appellant]: Is there anyone here who would be embarrassed, if the evidence warrants it, the evidence justifies it, who would be embarrassed to be a part of a verdict for plaintiff? Anybody here who would fall into that category, it would bother them if they were a part of a verdict that was for plaintiffs if the evidence supported it?

(No responses.)

COUNSEL [for respondent]: Now, you've heard a lot of questions, and some of them, although I said I wasn't going to be repetitive I have to admit some of them probably were repetitive, but, and I think you understand that, why we're asking you these questions is to get a feel for whether there's any reason you wouldn't be a fair and impartial juror in this case, just this case alone is all we're worried about right now. And, if there's any reason that any of you feel that we haven't touched upon by any of our questions, that you would not be a fair and impartial juror to both sides, to Mr. and Mrs. Morris and to Dr. Spencer, now's the time to let us know....

(No responses.)

Counsel for appellant also asked the following question of venirepersons Thornburg, Carson and a third venireperson who had been a patient of Dr. Spencer:

COUNSEL [for appellant]: I want to ask you three, because you all have been treated by him and had a good recovery from it and good experience, would you find it difficult to believe that in another case in another situation that Dr. Spencer did not provide proper care, would you have difficulty believing that because of your experience?

VENIREPERSON THORNBURG: No.

(No other responses.)

Venireperson Thornburg stated clearly and unequivocally that she could be fair to appellant in spite of the fact that she had been a patient of Dr. Spencer's some fifteen years previously. Venireperson Carson stated that he did not believe his familiarity with Dr. Spencer would affect him and that he believed he could be fair. Mr. Carson did not believe that having known Dr. Spencer or having been his patient would effect his ability to hear the evidence even to the slightest degree.

■ Idioms such as "I believe I could" are common vernacular for definitive expressions of a person's state of mind. Such expressions are not equivocations. *State v. Evans,* 701 S.W.2d 569, 573 (Mo. App.1985); *State v. Pride,* 567 S.W.2d 426, 433 (Mo.App.1978). As adeptly stated by Judge Smith in *Pride* at 433, "As much as judges and lawyers might desire it, people generally do not speak in absolutes, probably because they realize that few things are ever absolute."

■ The responses of venirepersons Thornburg and Carson were not equivocal such as to allow the closer scrutiny by this court of the trial judge's discretion in failing to excuse these venirepersons as found appropriate by the court in *Catlett,* 793 S.W.2d at 351.

■ The discretion lies with the trial court to determine whether a venireperson can be an impartial juror. *Collins,* 735 S.W.2d at 405. The determination is a factual one that is to be made by the trial court on the basis of the questions and answers elicited on voir dire as well as the demeanor and credibility of the venireperson. *State v. Wraggs,* 512 S.W.2d 257, 259 (Mo.App.1974). The testimony of a venireperson as to his ability to act impartially is primary evidence of this fact. *State v. McGrew,* 534 S.W.2d at 551.

■ It is also significant in the case at bar that the responses of venirepersons must be viewed in their entirety in determining whether they expressed bias or prejudice which will prevent them from being impartial. *Hefele v. National Super Markets, Inc.,* 748 S.W.2d 800, 804 (Mo. App.1988). Additionally, general questions and nonverbal responses may be considered in determining a venireperson's qualifica-

**14**

tions. *Bannister v. State*, 726 S.W.2d 821, 826 (Mo.App.1987), cert. denied 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987).

The record is clear that in regard to the specific and general question both venireperson Thornburg and Carson exhibited unequivocally that they would be impartial in deciding the case at bar. There was no abuse of discretion by the trial court's refusal to excuse for cause venirepersons Thornburg and Carson.

The judgment of the trial court is affirmed.

BRECKENRIDGE, J., concurs.

KENNEDY, J., dissents in separate dissenting opinion.

KENNEDY, Presiding Judge, dissenting.

It is not realistic to think venireman Carson could consider without bias a verdict that would convict his esteemed physician and family friend of malpractice, to the damage of the physician's reputation and his estate, and at the risk of valued relationships between friends and between physician and patient. To accept venireman Carson's statement that he could do so is to allow him to judge his own qualifications as a juror.

If venireman *Carson* actually believed he could serve as a fair and impartial juror in the case, he did not foresee and could not gauge his internal conflicts when he had to vote for the plaintiff on the one hand or for the defendant on the other, and, if for the plaintiff, how much to award.

Plaintiffs' challenge for cause to venireman Carson should have been sustained, and it was an abuse of the trial court's discretion to deny it. I would reverse the judgment and remand the cause for a new trial.