**Adrian M. RILEY, Appellant,**

v.

**UNION PACIFIC RAILROAD, Respondent.**

**No. WD 48453.**

Missouri Court of Appeals, Western District.

June 27, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

Joseph L. Walsh, III, Gray and Ritter, P.C., St. Louis, for appellant.

John S. Johnston, Keith T. Borman, Shook, Hardy & Bacon, P.C., Kansas City, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and HANNA, JJ.

ULRICH, Presiding Judge.

Adrian M. Riley appeals the judgment following jury verdict entered in favor of Union Pacific Railroad Company in his action brought against the Railroad under the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.* The judgment of the trial court is affirmed.

Mr. Riley was employed by the Union Pacific Railroad Company (Railroad) as a special agent with law enforcement responsibilities. He was stationed in Coffeyville, Kansas, and was the sole agent for parts of Kansas, Missouri, Oklahoma, Arkansas, and Texas. As a special agent, he was assigned to protect company property, freight, and employees. His responsibilities included inspecting bridges, crossings, buildings, and other facilities for possible trouble or disruption of shipments and effecting arrests of trespassers. Additionally, he inspected railroad cars for tampering or break-ins and was responsible for the yard security in Coffeyville.

On Saturday, July 30, 1988, Mr. Riley was notified that the Railroad had a "hot load or high-value load" of tires going through the Coffeyville yard. He was informed that tires from such shipments had been stolen before, and he was responsible for observing these cars while they were in transit to determine whether they appeared to have been tampered with. Mr. Riley intended to observe the moving trains on the west side by going to the south end of the Coffeyville yard. After the train passed, he intended to observe the east side of the train by driving his vehicle to a public street crossing north of the Coffeyville yard.

Mr. Riley drove south down a railroad service road that was parallel with the track running north and south through the yard. The service road was below the roadbed of the track. Mr. Riley drove his car as far as he could and then climbed up an embankment to the top of the roadbed. He testified that, while walking along the roadbed, he could see that the Railroad had been performing track and bridge construction in the area.

While waiting for the train to arrive, Mr. Riley decided to inspect a waterway bridge below the roadbed because trespassers had been reported in the area, and his supervisor had told him that he should increase the number of his inspections. Walking south along the roadbed in the southern end of the yard, he approached the bridge that he intended to inspect and began his descent approximately ten feet north of the bridge. Mr. Riley placed one foot on the edge of the ballast of the roadbed and moved his right foot down to the ground that sloped to the mouth of the bridge; but before he could firmly plant his right foot on the ground, the ballast of the roadbed collapsed under his weight. He slid approximately 15 to 20 feet down to the area of the mouth of the bridge, rotating about a half turn by the time he landed on his feet at the bottom. Although

Mr. Riley testified that he felt pain in his back and spine, he continued his inspection and did not file an accident report that morning.

Mr. Riley went home for lunch and after a nap, awoke in pain and needed assistance getting out of his recliner and into bed. He stayed in bed the remainder of Saturday and Sunday. On Monday morning, he went to the Railroad office at Coffeyville, called his supervisor, and filled out an accident report. On the accident report, he indicated that the cause of the accident was that "loose ballast gave way under foot."

Mr. Riley saw his family doctor, Dr. Salrin, on August 1, 1988. The doctor's nurse indicated in office records that Mr. Riley had aggravated an injury in the same place he had surgery for the removal of a herniated disk in 1972, some sixteen years earlier. As a result of the surgery, Mr. Riley was off work for 28 days and returned to his regular job without any restrictions. He experienced some minor back problems between 1972 and 1988.

The Railroad sent Mr. Riley to Dr. Terry McLean in Kansas City, Missouri, for an MRI. Dr. McLean testified that Mr. Riley "would not be able to return to his pre-injury job indefinitely." Dr. McLean prescribed physical therapy and an epidural injection.

On November 8, 1990, Mr. Riley saw Dr. William Dillon. A myelogram revealed an "extradural indentation at L4–5 level, suspicious for disk herniation and irregular narrowing of the thecal sac, or the sac around the nerves at the level of L5–S1." Dr. Dillon performed a decompressive laminectomy at L4–5. He believed that Mr. Riley had disk problems at levels above the level that was involved in his prior surgery. He testified that Mr. Riley had suffered permanent injuries and would have to "be very careful as to how he used his lower back for the rest of his life." Dr. George Schoedinger in St. Louis confirmed the diagnosis.

Mr. Riley has not worked since the date of his accident. At the time of his injury, he was earning $3,306 per month. In January 1989, Mr. Riley was offered vocational rehabilitation. He declined the job offer from the Railroad.

From the jury verdict, Mr. Riley appeals the judgment entered in favor of the Railroad.

**I**

■ As point one on appeal, Mr. Riley contends that the trial court erred when it admitted into evidence Exhibit 13, a photograph of the scene of the accident in question, taken five years after the date of the accident. The photograph was admitted as a fair and accurate representation of the scene where Mr. Riley fell as of June 17, 1993, two weeks before trial, not necessarily on the date of the accident, July 30, 1988.

■ The admission or rejection of a photograph is within the discretion of the trial court. *Rust & Martin, Inc. v. Ashby*, 671 S.W.2d 4, 8 (Mo.App.1984); *Beshore v. Gretzinger*, 641 S.W.2d 858, 861 (Mo.App.1982); *Fox v. Kansas City*, 343 S.W.2d 200, 201 (Mo.App.1960). That ruling will not be disturbed on appeal unless it is shown to be an abuse of discretion. *Id.*

■ A photograph is admissible if "it is a true and faithful representation of the subject, place or condition it purports to represent, as it existed at the time pertinent to the inquiry." *Weber v. Missouri K.T. R.R.*, 519 S.W.2d 307, 313 (Mo.App.1975) (quoting *Fox*, 343 S.W.2d at 201). The proponent of the photograph must lay a foundation by extrinsic evidence that the photograph is what it purports to be. *Id.* If a witness familiar with what it shows testifies the photograph accurately represents the scene it portrays, the photo is admissible. *Rust & Martin, Inc. v. Ashby*, 671 S.W.2d 4, 8 (Mo.App.1984). A photograph taken long after an event may be admissible if any changed conditions of the area depicted are adequately explained. *Berry v. Federal Kemper Ins. Co.*, 621 S.W.2d 948, 951 (Mo.App.1981).

In *Harris v. F.W. Woolworth*, 824 S.W.2d 31 (Mo.App.1991), a defendant in a slip and fall case complained that the trial court erred in admitting into evidence two photographs of an alley where the accident occurred taken six months after the accident. *Id.* at 35. In

concluding that the trial court did not abuse its discretion in admitting the photographs, the Eastern District reasoned that the challenged photos were used primarily to demonstrate the area where the accident occurred, not to depict the alley on the day of the accident. *Id.* It also noted that the jury was not misled about whether the photographs were contemporaneous with the accident. *Id.*

In this case, Mr. Riley contends that the photograph was not representative of the scene of the accident when the accident occurred because the photograph was taken five years after the accident. The Railroad, however, used the photograph not to show the location of the accident or condition of the roadbed and ballast when the accident occurred, but to show the general area and topography of the land where the accident occurred. The photograph was unambiguously introduced as a depiction of the accident scene shortly before trial, not at the time of the accident. The photographer testified that the photograph was a "fair and accurate representation of the way it looked on June 17, 1993." Consequently, the trial court did not abuse its discretion in admitting Exhibit 13.

Even if the admittance of the photograph was error, Mr. Riley was not prejudiced by it. Mr. Riley introduced a diagram at trial depicting the area where the accident occurred. He visited the scene of the accident with his attorney in April or May 1993 in preparation for trial and an artist drew the diagram from his description of the area. Mr. Riley introduced a diagram of the area drawn two or three months prior to trial to show the jury where the accident occurred

and cannot now claim that the introduction of Exhibit 13 prejudiced him. *See Vasseghi v. McNutt,* 811 S.W.2d 453, 456 (Mo.App.1991) (error in admitting evidence is not grounds for reversal if it does not prejudice complaining party.)

Point one is denied.

## II

Appellant complains in point two that the trial court prejudicially erred in permitting counsel for the Railroad to cross-examine Mr. Riley about the allegations set forth in paragraphs 5(B)(C)(D) of the original petition because these allegations constitute conclusions of law and not statements of fact.[1]

In general, an abandoned pleading may be admitted as evidence in the proceeding in which it was originally filed to establish admissions against interest or for impeachment purposes. *Danneman v. Pickett,* 819 S.W.2d 770, 772 (Mo.App.1991); *Bray v. Bray,* 629 S.W.2d 658, 660 (Mo.App.1982). An admission, however, must be an assertion of fact, not a conclusion of law. *Danneman,* 819 S.W.2d at 772. Whether a particular statement is one of fact or a conclusion of law may depend on the circumstances. *In re Estate of Mitchell,* 610 S.W.2d 681, 690 (Mo. App.1980). "General allegations that simply state that plaintiff's damages were caused by some conduct on the part of defendant ... are legal conclusions, not admissions of fact." *Fahy v. Dresser Indus., Inc,* 740 S.W.2d 635, 642 (Mo. banc 1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

Mr. Riley relies on two Missouri Supreme Court cases in claiming that allega-

---

1. Paragraphs 4 and 5 of Mr. Riley's original petition state:

4. On or about July 30, 1988, while plaintiff was awaiting the arrival of one of defendant's trains in or near the south end of defendant's yard located in Coffeyville, Kansas, plaintiff undertook an inspection of one of the defendant's bridges when he observed evidence that trespassers may have been located in the area under or near said bridge. As plaintiff approached a pathway leading down to the bridge bottom, the ballast and footing adjacent to defendant's tract caused him to fall approximately 15–20 feet down the bridge embankment.

5. The aforesaid occurrence and resulting injuries and damages sustained by plaintiff were caused by the negligence and carelessness of defendants in the following respects, to wit:
(a) Defendants failed to provide reasonably safe conditions of work;
(b) Defendants failed to provide reasonably safe methods of work;
(c) Defendants failed to provide reasonably safe appliances;
(d) Defendants failed to provide reasonably adequate help.

tions from his original petition used to impeach him were conclusions of law and thus inadmissible. In *Fahy v. Dresser Industries, Inc.*, plaintiff Fahy brought suit for injuries suffered when he was run over by an asphalt roller. One defendant wanted to read to the jury allegations from plaintiff's superseded petition that other defendants caused plaintiff's injuries because they manufactured and sold a replacement engine for the roller which was "defective and unreasonably dangerous." *Fahy*, 740 S.W.2d at 642. The defendant asserted that the allegations were an admission against interest by Fahy because they were admissions that some other entity was liable for Mr. Fahy's injuries. *Id.* The Missouri Supreme Court held that the allegations were legal conclusions and thus inadmissible as admissions against interest. *Id.*

In *Wors v. Glasgow Village Supermarket, Inc.*, 460 S.W.2d 583 (Mo.1970), a plaintiff brought suit for injuries resulting from the explosion of a soda bottle in a supermarket. The Supreme Court decided that the allegation in plaintiff's petition that "the explosion was a direct and proximate result of the negligence of the defendants in the manufacture, distribution and handling of the soda" was a legal conclusion and was not admissible. *Id.* at 590.

In the instant action, Mr. Riley's original petition pleaded negligence of the Railroad in failing to provide reasonably adequate help and reasonably safe methods of work. The Railroad was allowed by the trial court to cross-examine Mr. Riley on these broad allegations of negligence in order to question his credibility. Like the allegations in *Fahy* and *Wors*, the allegations in Mr. Riley's original petition are legal conclusions. Therefore, it was error for the trial court to allow cross-examination on the allegations.

▮▮▮▮ An appellate court shall not reverse any judgment of a trial court for error unless the error materially affects the merits of the action. Rule 84.13(b). "With regard to the admission of evidence, plaintiff must not only point out the alleged error but also show that he was prejudiced by the rulings alleged to be erroneous." *Danneman v. Pickett*, 819 S.W.2d 770, 773 (Mo.App.1991).

Error in the admission of evidence which affects or influences the jury's verdict or affects the result or outcome of the trial is prejudicial. 5A C.J.S. Appeal & Error § 1724 (1958).

In *Danneman v. Pickett*, the plaintiff in a negligence action claimed the trial court erred in allowing the defendant to question him about allegations in his original petition that the defendant had acted intentionally. The appellate court found it questionable whether the petition was admissible against plaintiff as an admission, but nevertheless affirmed the judgment for the defendant because even if it was error to admit the petition, plaintiff was not prejudiced by the admission. *Danneman*, 819 S.W.2d at 773. The court relied on the facts that the petition was never offered into evidence, the defendant only asked one question about the petition, and the plaintiff did not object at the time the question was posed. *Id.*

▮▮▮▮ In the present case, the transcript reveals that Mr. Riley's petition was not offered into evidence at trial. Furthermore, the Railroad only asked two questions about the original pleading. The brief cross-examination concerned Mr. Riley's credibility in general, not an issue directly establishing or defeating liability on the part of the Railroad. Therefore, Mr. Riley was not prejudiced by the cross-examination on allegations in his original petition.

Point two is denied.

### III

▮▮▮▮ Appellant complains in point three that the trial court erred in requiring an additional paragraph in plaintiff's verdict directing instruction which required the jury to find that at the time Mr. Riley was injured, the railroad had actual or constructive knowledge of the unsafe working condition of the roadbed and bridge embankment in its yard.

▮▮▮▮ In a FELA case where a plaintiff claims a defendant failed to provide a reasonably safe place to work, the defendant's knowledge of the unsafe condition is an essential element. *See Qualls v. St. Louis S.W. Ry.*, 799 S.W.2d 84 (Mo. banc 1990),

*cert. denied*, 499 U.S. 961, 111 S.Ct. 1585, 113 L.Ed.2d 650 (1991); *Henry v. Union Pac. Sys.*, 875 S.W.2d 212 (Mo.App.1994). This requirement is reflected in the Missouri Approved Jury Instructions. The Notes on Use under MAI 24.01 state:

> 2. The specifications of negligence set forth in this instruction concern conditions of which the defendant had constructive knowledge.
>
> In the event plaintiff submits some act of negligence, constructive knowledge of which is not chargeable to the railroad, there shall be submitted in addition a paragraph providing "Second, conditions for work were not reasonably safe and defendant knew or by using ordinary care could have known of such conditions and that they were not reasonably safe, and".

In determining whether the additional paragraph should be used, the trial court must decide if the plaintiff has presented sufficient evidence to justify not submitting the knowledge requirement to the jury. *Qualls*, 799 S.W.2d at 87. If the evidence concerning defendant's knowledge is sufficiently disputed, the issue of fact should be submitted to the jury. *Qualls*, 799 S.W.2d at 87; *Henry*, 875 S.W.2d at 214.

In *Qualls v. St. Louis Southwestern Ry. Co.*, a railroad laborer brought action under FELA for injuries he sustained while crossing ice- and snow-covered railroad trestles. The Missouri Supreme Court found disagreement in the testimony as to the extent of the accumulation of ice and snow and the condition of the trestle. *Qualls*, 799 S.W.2d at 87. Consequently, it held that under such circumstances there was an issue of fact as to defendant's knowledge of the conditions that must be submitted to the jury. *Id.*

Likewise, in the instant case, there was conflicting evidence as to what actually caused Mr. Riley's fall and whether the cause was visible and obvious to the Railroad. Therefore, the question of whether the Railroad had actual or constructive knowledge of the conditions leading to Mr. Riley's injuries was an issue of fact that must have been submitted to the jury. The trial court did not err in modifying the verdict director to include the knowledge requirement.

Point three is denied.

## IV

■ For his fourth point, appellant claims that the trial court erred in its contributory negligence instruction because the instruction was general enough to encompass more than one specific manner in which Mr. Riley was contributorily negligent thereby giving the jury a roving commission to determine for itself the way Mr. Riley was contributorily negligent. Additionally, Mr. Riley claims the Railroad failed to provide any evidence to support the instruction.

■ Generally, an error regarding instructions is not prejudicial if the jury never reaches the point in question. *See Lee v. Mirbaha*, 722 S.W.2d 80, 83–84 (Mo. banc 1986); *Le Grand v. U–Drive-It Co.*, 247 S.W.2d 706, 713 (Mo.1952). "Under comparative negligence in Missouri any error in giving a comparative fault instruction is harmless if the jury finds no negligence on the part of the defendant." *Duren v. Kunkel*, 849 S.W.2d 145, 147 (Mo.App.1993) (citing *Hyman v. Robinson*, 713 S.W.2d 300, 301 (Mo.App.1986)). *See also, Woodiel v. Barclay Enters., Inc.*, 858 S.W.2d 247 (Mo.App. 1993); *Titsworth v. Powell*, 776 S.W.2d 416 (Mo.App.1989); *Biever v. Williams*, 755 S.W.2d 291 (Mo.App.1988).

In *McNeal v. Union Pac. R.R. Co.*, 857 S.W.2d 436 (Mo.App.1993), the plaintiff in a FELA action claimed that the trial court erred in instructing the jury on the issue of contributory negligence. *Id.* The plaintiff contended that the defendant railroad failed to present evidence independent of plaintiff's own testimony warranting inclusion of the instruction. *Id.* Like this case, in *McNeal*, "[t]he issue of plaintiff's own negligence, or of his conduct, was not included in the verdict directing instruction on employer liability." *Id.* at 438. The jury unanimously found for the defendant on the issue of liability. *Id.* The court held that because the jury found there was no liability, plaintiff's contributory negligence was not at issue, and the

plaintiff was not prejudiced by inclusion of a comparative negligence instruction. *Id.*

In this case, the jury found that the Railroad was not negligent, and therefore, it did not reach the issue of Mr. Riley's contributory negligence. Because the jury found no liability on the part of the Railroad, any error in the contributory negligence instruction was harmless.

Point four is denied.

## V

■ Appellant complains in point five that the trial court erred in striking the medical opinion testimony of Dr. McLean that Mr. Riley's accident was the cause of his back injury. The doctor was asked a hypothetical question even though he was Mr. Riley's treating physician. The question was:

> Now, Doctor, I want you to assume that on or about July 30th, 1988, Mr. Riley was employed by the Missouri Pacific–Union Railroad. And while he was inspecting one of the railroad's bridges, the pathway leading down to the bridge bottom that he was walking on was surfaced by ballast, and the ballast and the footing adjacent to the track over this bridge gave way and caused Mr. Riley to fall approximately 15 to 20 feet down the bridge embankment.
>
> Assuming those facts, Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether or not the on-duty accident caused, in whole or in part, Mr. Riley to suffer any type of injury?

The Railroad's counsel objected to the question as an improper hypothetical. The trial court sustained the objection because the hypothetical did not include sufficient facts upon which the opinion could be expressed. Mr. Riley claims the hypothetical was proper.

Mr. Riley relies on *Kummer v. Cruz,* 752 S.W.2d 801 (Mo.App.1988), for the proposition that a medical expert need not be present at the time of the injury in order to render an opinion as to the cause of injury based on personal knowledge. *Id.* In the instant case, however, Dr. McLean based his opinion on a hypothetical, not his personal knowledge. The case is, therefore, inapplicable and the question is whether there was a sufficient factual foundation in the hypothetical to support the opinion.

■ Missouri's trial courts exercise broad discretion in the matter of sufficiency of hypothetical questions to an expert witness. *St. Louis S. Ry. v. Federal Compress & Warehouse Co.,* 803 S.W.2d 40, 44 (Mo. App.1990); *Barr v. Vickers, Inc.,* 648 S.W.2d 577, 582 (Mo.App.1983). For an opinion to be proper, it must be based on sufficient facts and supported by substantial evidence. *Id.* "While it is not essential that a hypothetical question include all material facts in evidence, it must fairly hypothesize the material facts reasonably relevant to, and justly present, the questioner's theory of the case so that an answer is of assistance to the trier of fact." *Barr,* 648 S.W.2d at 582 (citing *Odum v. Cejas,* 510 S.W.2d 218, 222 (Mo. App.1974)).

Mr. Riley's hypothetical did not include sufficient material facts reasonably relevant to his theory of the case upon which an opinion could have been based. For example, the hypothetical included nothing about Mr. Riley's prior back problems or prior medical treatment which possibly could have caused his injury. Furthermore, the hypothetical misstated Mr. Riley's testimonial evidence regarding the fall. The trial court, therefore, did not err in striking the causation testimony of Dr. McLean.

■ If, however, striking the opinion testimony was error, it was not prejudicial to Mr. Riley. "[I]f in a specific instance the evidence should not have been excluded, the error is harmless if the same evidence is found in the testimony of the same or other witnesses." *Boring v. Kansas City Life Ins. Co.,* 274 S.W.2d 233, 239 (Mo.1955) (quoting *Steffen v. Southwestern Bell Tel. Co.,* 331 Mo. 574, 56 S.W.2d 47, 48 (1932)). *See also State Farm Mut. Auto. Ins. Co. v. Allen,* 744 S.W.2d 782 (Mo. banc 1988). In this case, another expert witness, Dr. Schoedinger, was allowed to render his opinion that Mr. Riley's fall caused his new back injuries.

Point five is denied.

## VI

Next, appellant claims the trial court erred in giving a withdrawal instruction at the request of the Railroad concerning medical expenses and future lost wages. Mr. Riley argues that sufficient evidence was presented that he was not employable in his industry and that his condition was permanent to present the issue to the jury.

"Error is harmless if it relates solely to the issue of damages and the jury never reaches that issue." *Collins v. West Plains Memorial Hosp.*, 735 S.W.2d 404, 409 (Mo. App.1987) (citing *Guthrie v. Missouri Methodist Hosp.*, 706 S.W.2d 938, 943 (Mo.App. 1986)). Furthermore, any error in damage instructions is harmless error when the jury finds no liability on the substantive claim. *Santillan v. Pettit*, 871 S.W.2d 77, 80 (Mo. App.1994) (citing *Ins. Co. of N. Am. v. Skyway Aviation*, 828 S.W.2d 888, 894 (Mo.App. 1992)). The jury found for the Railroad on the negligence claim and, therefore, never reached the issue of damages.

Point six is denied.

## VII

As point seven, Mr. Riley claims the trial court erred in denying his motion to strike certain witnesses or, alternatively, for a continuance to depose the witnesses. Four days before trial, the Railroad filed a supplemental answer to interrogatories naming eleven individuals who had knowledge concerning the accident scene. The Railroad claimed to have been "confused by the information requested." The Railroad noted that only two of the eleven individuals would be called to testify as to subjects covered by the interrogatories. Mr. Riley filed his motion to strike. One of the witnesses testified. This witness had been designated in the original discovery answers as a witness on other matters and was not questioned at trial about the matters for which he was identified in the supplemental answers to interrogatories. The other identified witness was not called to testify. Mr. Riley argues that he was prejudiced because he was denied the opportunity to depose the numerous witnesses having knowledge of the accident scene.

Trial courts in Missouri are vested with broad discretion in administering the rules of discovery, and a reviewing court should not disturb the trial court's rulings absent abuse of discretion. *Barnes v. Kissell*, 861 S.W.2d 614, 618 (Mo.App.1993); *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992) (citing *Klein v. Gen. Elec. Co.*, 714 S.W.2d 896, 906 (Mo.App. 1986)). Furthermore, examination of a witness whose name has not been disclosed, though requested, is a matter resting within the sound discretion of the trial court. *Dane v. Cozean*, 636 S.W.2d 87, 90 (Mo.App.1982) (citing *Bethell v. Porter*, 595 S.W.2d 369, 377 (Mo.App.1980)).

The record does not support Mr. Riley's claim that the trial court abused its discretion in not striking the witnesses as he requested or for failing to grant his alternative motion to grant a continuance. Only one of the witnesses identified testified, and this witness did not testify about the matters for which he was identified in the supplemental answers to interrogatories. Mr. Riley's motion was to strike as witnesses the persons identified in the supplemental answers to interrogatories thereby preventing their trial testimony. Mr. Riley got what he sought by his motion. The alternative motion for a continuance was moot.

The trial court's decision in this case to deny Mr. Riley's motion to strike certain witnesses was not an abuse of discretion where the witnesses did not testify as to the matter in question.

Point seven is denied.

## VIII

As point eight, appellant claims the trial court erred in removing a black male juror at the conclusion of the evidence.

Mr. Riley relies on *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), which held that a race-based exclusion violates the equal protection rights of the challenged juror, therefore, a private litigant in a civil case may not use his preemptory challenge to exclude a juror solely on account of his race. *Id.*, 500 U.S. at 615, 111 S.Ct. at 2080. Mr. Riley

contends that there was not enough evidence to justify the removal of the black juror in light of his constitutional protection.

■ "It is within the discretion of the trial court to dismiss a juror who has slept through the presentation of evidence." *Lester v. Sayles,* 850 S.W.2d 858, 870 (Mo. banc 1993) (citing *State v. Whitman,* 788 S.W.2d 328, 337 (Mo.App.1990)). The trial court is in a better position than an appellate court to determine whether a juror will be able to carry out his duties effectively. *State v. Cook,* 782 S.W.2d 762, 763 (Mo.App.1989).

The trial court found that the juror had slept through much of the evidence the first two days of trial, was habitually late arriving throughout the trial, was reading a book during testimony, and "displayed to the Court a total lack of any interest or understanding of the case or any attempt to derive benefit from the evidence that was given." Several grounds for removing the juror existed including his inattentiveness and sleeping. These grounds related to juror's performance, not his race; therefore, the trial court did not abuse its discretion.

Point eight is denied.

### IX

■ Finally, appellant contends that the aggregation of trial court errors produced a cumulative effect of prejudice sufficient to warrant a new trial. In *Faught v. Washam,* 329 S.W.2d 588 (Mo.1959), the Missouri Supreme Court recognized that numerous errors committed by the trial court can, in their totality, constitute reversible error, although any single matter standing alone would not constitute such error. *Id.* at 604. *Faught* is not applicable in this instant case because the trial court committed only a single non-prejudicial error (point two).

Point nine is denied.

The judgment of the trial court is affirmed.

All concur.